Exhibit A

**TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER**

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 14-00989

MIDDLESEX ........................, ss

Alan Sanderson, et al., Plaintiff(s)

v.

VMware, Inc. ..................., Defendant(s)

## SUMMONS

To the above-named Defendant:
VMware, Inc.
c/o CT Corporation System
155 Federal St., Suite 700, Boston, MA

You are hereby summoned and required to serve upon ....... David P. Angueira, Esq. ...........

.......................................... plaintiff's attorney, whose address is Swartz & Swartz .......

10 Marshall St., Boston, MA 02108 ........., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ....................................

200 TradeCenter, Woburn, MA ........ either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse**, Esquire, at ............................................................................

the ........... 28th ............................... day of .March...........................................................

...................... in the year of our Lord ........2014...........................

A true Copy Attest:

Deputy Sheriff Suffolk County

Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

**NOTES.**
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS                   SUPERIOR COURT
                                    CIVIL ACTION NO.:

| | |
|---|---|
| ALAN SANDERSON, MELISSA ) | |
| PLUNKETT, PAUL GENTILE, ) | |
| and BRIAN KLAUBER ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | **COMPLAINT AND DEMAND** |
| ) | **FOR TRIAL BY JURY** |
| VMWARE, INC. ) | |
| ) | |
| Defendant. ) | |

## PARTIES

1.     Plaintiff, Alan Sanderson, is an individual residing at 6 Whirty Circle Hopkington, Middlesex County, Massachusetts 01748.

2.     Plaintiff, Melissa Plunkett, is an individual residing at 1506 San Carlos Drive Austin, Texas 78757.

3.     Plaintiff, Paul Gentile, is an individual residing at 11 Sedgwick Street Jamesburg, New Jersey 08831.

4.     Plaintiff, Brian Klauber, is an individual residing at 5 Forsythia Drive Nashua, New Hampshire 03062.

5.     Defendant, VMware, Inc., is a duly incorporated corporation with a Massachusetts place of business located at 5 Cambridge Center, Cambridge, Middlesex County, Massachusetts 02142.

## JURISDICTION

6.     The Defendant transacts business in Massachusetts such that it is subject to personal jurisdiction in Massachusetts.

1

## FACTS

7.      During 2012, the Plaintiffs were all employees of DynamicOps, Inc. ("DynamicOps").  In July 2012, as a result of the acquisition of DynamicOps by the Defendant, VMware, Inc. ("VMware"), all of the Plaintiffs became employees of the Defendant, VMware. Mr. Sanderson became a Cloud Management Sales Specialist and the other Plaintiffs became part of the technical support staff for VMware, working in conjunction with the sales staff. During this time, VMware was marketing its cloud products to various industries and sought the experience and expertise of the Plaintiffs to assist in their sales and marketing plans.

9.      When the Plaintiffs were hired by VMware, they were initially hired under the same salary commission plan that they had been working under as employees of DynamicOps. However, in August 2012, VMware proposed a new sales commission plan and asked each plaintiff to sign the new commission plan prior to the close of December 2012.  (See the new commission plan of Alan Sanderson as an example, attached hereto as Exhibit A).  The plan was promoted by VMware as an incentive to encourage its employees, including the plaintiffs, to actively market and sell VMware's products in an effort to capture a major share of this relatively new cloud market.  The plan provided for certain commissions to be paid at a higher tier if certain goals were met by the employees.  The plan was presented to all employees and the plaintiffs accepted and agreed to the new proposed commission plan.

10.      After the acquisition, VMware conducted several orientation and training meetings and sessions with the plaintiffs between July and September 2012 in their Burlington, Massachusetts office.  In addition, some of these meetings were held in other Massachusetts locations such as Cambridge, Hopkinton and Weston, Massachusetts.  The plaintiffs participated in frequent business trips into the state of Massachusetts between September and October 2012, including but not limited to interactions in East Boston, Boston, Hopkinton, Cambridge, Chelmsford, Massachusetts on behalf of VMware, Inc.  Additionally, many of the services provided by the plaintiffs on behalf of VMware to its customers and potential customers consisted of daily email communications and other electronic communications with individuals and/or entities in Massachusetts and various other states.

11.      The plaintiffs' initial orientation at the time of the acquisition occurred in Massachusetts, as well as additional training.  All leadership, engineering, support, marketing, training and product teams ran out of the Massachusetts office and the plaintiffs worked closely with them. In addition, some of the plaintiffs would work remotely with headquarters via email, voice, Skype and videoconference on a regular basis, including participating with the Burlington Massachusetts office.

2

12.     Based on the inducements and representations by VMware that the plaintiffs
would receive commissions based on certain goals that had been set by the company and agreed
upon by the plaintiffs, each of the plaintiffs agreed to the new commission plan.

13.     Each plaintiff then devoted their best efforts to the sale and success of VMware's
products and the servicing of VMware's clients, including but not limited to active sales call,
active participation in describing and explaining the products to potential and current customers,
addressing client concerns regarding ongoing projects, troubleshooting issues of VMware's
customers and various other activities.

14.     Under the new compensation plan, the plaintiffs were to be paid a certain
commission(s) if they reached a certain level of sales and/or productivity.  Each of the plaintiffs
did in fact reach and exceed the level of productivity and goals agreed upon by the defendant and
the plaintiffs requested that they be paid their commissions based on the new commission plan.

15.     Instead of paying the plaintiffs the commissions they were due under the new
plan, the company decided to unilaterally change the commission plan and decrease the amount
of commission paid to the plaintiffs.  In fact, the company made an across-the-board decision to
pay all of its employees less than it knew they were entitled to in part because the success of the
program was much better than anticipated, which would have required the company to pay its
employees a large portion of the revenue these employees had earned on behalf of the company.
Instead of honoring its commitment to its employees, the defendant reneged on its promises to its
employees and after having fraudulently induced these employees to commit their best efforts to
the sale of VMware products, VMware changed the deal and paid the employees less than they
were entitled to under the new plan.

16.     Several employees including the plaintiffs complained about the reduced
commission and filed an appeal of the company's decision.  However, these appeals were flatly
rejected.  As a result of the company's refusal to honor its commitment to its employees, the
plaintiffs through their joint counsel, David P. Angueira, sent a demand letter to VMware
advising the company that it had violated Massachusetts wage laws and demanded full
reimbursement, including punitive damages as required pursuant to M.G.L. c. 149 §148-150.
(See demand letter attached hereto as Exhibit B).  In response to that demand letter, the
defendant agreed to provide some additional compensation, however, it refused to provide the
full amount of money to which the Plaintiffs were now entitled as a result of the Defendant's
violation of M.G.L. c. 149 §§148, 148A and 150.

17.     In response to VMware's refusal to pay the amount of money it owed to the
plaintiffs, the plaintiffs filed a formal complaint directly with the Massachusetts Attorney
General's Office.  (See Complaint attached hereto as Exhibit C).  Pursuant to M.G.L. c. 149

3

§148 et seq., the plaintiffs then requested permission to bring this private cause of action against VMware for its violation of M.G.L. c. 149.   In response to plaintiffs' complaints, the defendant then changed its decision about paying other employees the money they were owned and decided to pay all other employees, including the Plaintiffs, the amounts of commissions they were entitled to except for the amounts required by M.G.L. c. 149 §§148 – 150 directly as a result of the plaintiffs' demand.   These actions were done to avoid a class action lawsuit by its employees.   The Plaintiffs rejected the proposal because it did not provide full compensation as required pursuant to M.G.L. c. 149 §§148 – 150.   The following table represents the amounts of salary and commissions due to each Plaintiff and the Defendant's proposed payments:

| Plaintiff | Amount of Commission Due | Amount Due Per c. 149 §§148-150 |
|---|---|---|
| Alan Sanderson | $108,503.00 | $325,509.00 |
| Melissa Plunkett | $119,950.68 | $359,852.04 |
| Paul Gentile | $95,426.35 | $286,279.05 |
| Brian Klauber | $101,327.36 | $303,982.08 |

## COUNT I
## ALAN SANDERSON v. VMWARE, INC. FOR VIOLATION OF WAGE ACT—NONPAYMENT OF WAGES
### (M.G.L c. 149 § 148)

18.     Plaintiff restates, realleges and incorporates the allegations of paragraphs 1 though 17 as if fully set forth herein.

19.     Defendant was the employer of the Plaintiff within the meaning of M.G.L. c. 149 §148.

20.     Defendant did not pay the Plaintiff wages and commissions due and owed to him within the time period specified by M.G.L. c. 149 §§148 – 150.

21.     Defendant was required to pay the Plaintiff his full salary including all commissions he earned.

22.     Pursuant to M.G.L. c. 149 §§148 – 150, Defendant is liable to Plaintiff in an amount of $325,509.00, and other damages including costs and reasonable attorney's fees.

4

WHEREFORE, Plaintiff demands judgment in his favor against the Defendant in the amount of three times the amount of such wages and damages owed as a result of the Defendant's failure to pay the Plaintiff's wages, as well as attorney's fees, costs and prejudgment interest.

## COUNT II
## MELISSA PLUNKETT v. VMWARE, INC. FOR VIOLATION OF WAGE
## ACT—NONPAYMENT OF WAGES
## (M.G.L c. 149 § 148)

23.    Plaintiff restates, realleges and incorporates the allegations of paragraphs 1 though 22 as if fully set forth herein.

24.    Defendant was the employer of the Plaintiff within the meaning of M.G.L. c. 149 §148.

25.    Defendant did not pay the Plaintiff wages and commissions due and owed to her within the time period specified by M.G.L. c. 149 §§148 – 150.

26.    Defendant was required to pay the Plaintiff her full salary including all commissions she earned.

27.    Pursuant to M.G.L. c. 149 §§148 – 150, Defendant is liable to Plaintiff in an amount of $359,852.04, and other damages including costs and reasonable attorney's fees.

WHEREFORE, Plaintiff demands judgment in her favor against the Defendant in the amount of three times the amount of such wages and damages owed as a result of the Defendant's failure to pay the Plaintiff's wages, as well as attorney's fees, costs and prejudgment interest.

## COUNT III
## PAUL GENTILE v. VMWARE, INC. FOR VIOLATION OF WAGE
## ACT—NONPAYMENT OF WAGES
## (M.G.L c. 149 § 148)

28.    Plaintiff restates, realleges and incorporates the allegations of paragraphs 1 though 27 as if fully set forth herein.

29.    Defendant was the employer of the Plaintiff within the meaning of M.G.L. c. 149 §148.

5

30.    Defendant did not pay the Plaintiff wages and commissions due and owed to him within the time period specified by M.G.L. c. 149 §§148 – 150.

31.    Defendant was required to pay the Plaintiff his full salary including all commissions he earned.

32.    Pursuant to M.G.L. c. 149 §§148 – 150, Defendant is liable to Plaintiff in an amount of $286,279.05, and other damages including costs and reasonable attorney's fees.

WHEREFORE, Plaintiff demands judgment in his favor against the Defendant in the amount of three times the amount of such wages and damages owed as a result of the Defendant's failure to pay the Plaintiff's wages, as well as attorney's fees, costs and prejudgment interest.

## COUNT IV
## BRIAN KLAUBER v. VMWARE, INC. FOR VIOLATION OF WAGE ACT—NONPAYMENT OF WAGES
### (M.G.L c. 149 § 148)

33.    Plaintiff restates, realleges and incorporates the allegations of paragraphs 1 though 32 as if fully set forth herein.

34.    Defendant was the employer of the Plaintiff within the meaning of M.G.L. c. 149 §148.

35.    Defendant did not pay the Plaintiff wages and commissions due and owed to him within the time period specified by M.G.L. c. 149 §§148 – 150.

36.    Defendant was required to pay the Plaintiff his full salary including all commissions he earned.

37.    Pursuant to M.G.L. c. 149 §§148 – 150, Defendant is liable to Plaintiff in an amount of $303,982.08, and other damages including costs and reasonable attorney's fees.

WHEREFORE, Plaintiff demands judgment in his favor against the Defendant in the amount of three times the amount of such wages and damages owed as a result of the Defendant's failure to pay the Plaintiff's wages, as well as attorney's fees, costs and prejudgment interest.

6

The Plaintiffs,
By Their Attorney,

David P. Angueira, Esq.
BBO# 019610
Swartz & Swartz, P.C.
10 Marshall Street
Boston, MA 02108
(617) 742-1900
(617) 367-7193

Dated: March 5, 2014

7

# Quota Letter for Fiscal Year ending December 31st, 2012

*This document describes how Sales Commissions and Bonuses will be paid.*

Employee Name: Alan Sanderson
Manager: JP Bolen
Sales Role: Strategic Account Manager

Plan Start Date: 1-Jul-12
Plan End Date: 31-Dec-12
VMware Start Date: 20-Jul-12
Issued on: 8-Aug-12
Payroll location: Palo Alto

Annual Variable Target Incentive (VTI): $ 140,000
VTI applied to plan period: $ 70,000

| VTI Plan Elements (E), Bonuses (B) and Gates (G) | | | | Quota |
|---|---|---|---|---|
| E1 Quota:  License Bookings and First Year Maintenance | | | $ | 875,000 |
| E1 Weight: 100% | | | | |
| E1 Description: Assigned Territory | | | | |

| Rate Table for E1 | From | To | Effective Rate | Gate |
|---|---|---|---|---|
| Tier 1 | 0% | 50% | 8.00% | None |
| Tier 2 | 50% | 100% | 8.00% | None |
| Tier 3 | 100% | 150% | 12.80% | Must meet PS gate below in order to earn at this tier. |
| Tier 4 | 150% | No Limit | 18.40% | $ 70,000 |

| Attainment to date in 2012: | $1,003,532 |
|---|---|
| Maintenance Renewals: | 2% commission on renewal amount. |
| Professional Services: | 0% up to PS Gate, 2% beyond |

## Notes:

- Quota Elements 1 and 2 (if applicable) are retired by software license bookings and first year maintenance.
- Assigned Territory includes:
  - Americas Dell Solo
  - NA Federal Government
  - NA State, Local and Education (SLED)
  - NA Tier 2 Healthcare and selected Tier 1 Healthcare accounts
- Full credit for Dell Solo worldwide through July 31, 2012.
- Dell Solo greater than $2.0M paid out at Tier 1 rate.
- Credit applies for out year maintenance accompanying Dell Solo transactions.
- All amounts with the currency symbol "$" in this document are USD.
- This quote letter supersedes all previously issued versions for the same Plan Period.
- This plan is confidential VMware information and is not to be disclosed to any third party.
- This plan does not constitute a guarantee of employment for any period.
- VMware, Inc. reserves the right to modify this plan at any time.
- No other representation, either verbal or written, shall be valid unless documented in writing by VMware management.
- In the case of Dell Solo business, 2nd and 3rd year maintenance bookings will also qualify for compensation and retire E1 quota.
- By acknowledging this plan, you are indicating that you have received, read, understood and agreed to the above plan end compensation policy.**

## Payment Terms:

*Transactions below $500K:*
- Payout occurs at the end of the month following the month when the transaction was invoiced. ***

*Transactions between $500K and $3M:*
- Payout occurs at the end of the month following the month when the transaction was invoiced and 50% occurs the month following collection. ***

*Transactions above $3M:*
- Payout occurs at the end of the month following the month when the transaction was invoiced and 50% occurs after 6 months and/or after successful implementation, at discretion of SVP of Sales. ***

*** *Assumes no perceived credit risk as determined by VMware Finance.*

**Acknowledged By:

Name: _____

Date: _____



*Swartz & Swartz*
ATTORNEYS AT LAW
*The John & Ebenezer Hancock House on The Freedom Trail*
NUMBER TEN MARSHALL ST., BOSTON, MASSACHUSETTS 02108
617-742-1900   ·   FAX · 617-367-7193
EMAIL · ATTORNEY@SWARTZLAW.COM
WEBSITE · WWW.SWARTZLAW.COM

July 22, 2013

**VIA CERTIFIED MAIL/RRR**

VMware, Inc. Headquarters
3401 Hillview Avenue
Palo Alto, CA 94304

Dear Sir/Madam:

Please be advised that I represent Alan Sanderson, Melissa Plunkett, Paul Gentile and Brian Klauber. My clients were all employed by DynamicOps. All were employed in the capacity of sales personnel. DynamicOps was acquired by VMware on or about July 20, 2012. At the time that VMware acquired DynamicOps, its headquarters was in California however, it also had regional a regional office in Massachusetts. At the time that VMware acquired DynamicOps it hired all of my clients who had previously been employed by DynamicOps. Each of these individuals were hired under the same salary and commission plan that they had been working under with DynamicOps. In fact, each had signed an updated commission plan prior to the close of December 2012, which constitutes binding contracts. My clients performed all requested services from various locations, including home offices with the approval and consent of VMware. Based on these representations that they would receive their commissions as agreed upon, each of my clients devoted the best efforts to the sale of VMware's products and the servicing of their clients. At no time did VMware indicate to any of my clients that they intended to breach their contract with my clients and unilaterally change their commission plan which would significantly and adversely impact all of my clients' earned compensation for the year, as well as their compensation for the future.

Without any prior notice, and after my clients had earned their respective commissions in early January 2013 all of the former DynamicOps sales staff, including executives were informed that they would not be paid at the tier 4 level of their commission plans. It was VMware's intentions for this revised compensation plan to apply not only prospectively but also retrospectively for the close of the 2012 year. This announcement was unexpected, not what was contracted for between my clients and VMware, but more importantly affected commissions that had already been earned by and were due to my clients. Some of my clients, as well as, their colleagues, appealed the decision made by VMware however, their appeals were wrongfully denied.

As contracted for, each of my clients were entitled to commissions in the amounts and for the time periods as reflected below for the 2012 calendar year:



**ATTORNEYS AT LAW**
*The John & Ebenezer Hancock House on The Freedom Trail*
NUMBER TEN MARSHALL ST., BOSTON, MASSACHUSETTS 02108
617-742-1900   •   FAX • 617-367-7193
EMAIL • ATTORNEY@SWARTZLAW.COM
WEBSITE • WWW.SWARTZLAW.COM

Letter to VMware, Inc.
July 22, 2013
Page 2

### Chart Illustrating the Compensation Owed under the 2012 Compensation Plan Adopted by VMware

|  | Commission Earned for Full Year 2012 under DynamicOps Compensation Plan | Commission Paid for Full Year 2012 under VMware Compensation Plan | Amount Owed (Commission Earned Under DynamicOps Plan - Commission Earned Under VMware Plan) |
|---|---|---|---|
| Alan Sanderson | $547,530.00 | $439,027.00 | $108,503.00 |
| Melissa Plunkett | $321,085.49 | $201,134.81 | $119,950.68 |
| Paul Gentile | $471,950.36 | $376,524.01 | $95,426.35 |
| Brian Klauber | $352,046.02 | $250,718.66 | $101,327.36 |
| TOTAL OWED MY CLIENTS | $1,692,611.87 | $1,267,404.48 | $425,207.39 |

VMware as an employer of individuals residing and/or working within the Commonwealth of Massachusetts was required to comply with all applicable laws regarding the regulation of wages of employees. Mass. Gen. Laws ch. 149, § 148. The wage regulations require employers to provide employees with all of their earned wages and are designed to prevent unreasonable delay on the part of the employer distributing to its employees their earned wages. Mass. Gen. Laws ch. 149, § 148. Boston Police Patrolmen's Ass'n v. Boston, 435 Mass. 718, 720 (2002). The law governing employees' wages explicitly includes coverage to those who earn compensation in the form of commissions and such employees are entitled to the same methods of recourse as an employee paid a definitive weekly or bi-weekly income. Mass. Gen. Laws ch. 149, § 148. Okerman v. VA Software Corp., 69 Mass.App.Ct. 771, 775-780 (2007).   Any violation of the "Wage Act" (the law regulating employees wages) is ground for the Attorney General to file a complaint or seek indictment of the employer responsible for violating Mass. Gen. Laws ch. 149, § 148. Mass. Gen. Laws ch. 149, § 150.   Upon a suit being commenced there are limited grounds for an employer to bring a defense and no repayment plan or payout to employees may happen at that time. Mass. Gen. Laws ch. 149, § 150. Should an employer be found to have violated the Wage Act all aggrieved employees should be entitled to "an award of treble damages, as liquidated damages, for lost wages and other benefits and shall also be awarded cost of litigation and attorney fees." Mass. Gen. Laws ch. 149, § 150. Melia v. Zenhire, Inc. et al, 462 Mass. 164, 170 (2012). Additionally, a civil suit does not preclude criminal action and



*Swartz & Swartz*

ATTORNEYS AT LAW

*The John & Ebenezer Hancock House on The Freedom Trail*
NUMBER TEN MARSHALL ST., BOSTON, MASSACHUSETTS 02108
617-742-1900   •   FAX •   617-887-7198
EMAIL • ATTORNEY@SWARTZLAW.COM
WEBSITE • WWW.SWARTZLAW.COM

Letter to VMware, Inc.
July 22, 2013
Page 3

punishment for a violation of the Wage Act. Mass. Gen. Laws ch. 149, § 27(c). Aggrieved employees are also entitled to loss of benefits, including 401k plans and pension benefits. Mass. Gen. Laws ch. 149, § 150.

Please consider this letter notice of my clients' intention to file a claim with the Attorney General's office to report the illegal conduct of VMware where they failed to compensate my clients their earned commission and failed to do so in a timely matter as required. Mass. Gen. Laws ch. 149, § 148. You will have seven (7) days within which time to respond to this letter and pay all amounts due to my clients in order to avoid the filing of a claim with the Attorney General's office. If compensation has not been paid to my clients by that deadline, notice of VMware's violation of Mass. Gen. Laws ch. 149, § 148 will be presented to the Attorney General's office. Thereafter, a private lawsuit will be filed against VMware in the state of Massachusetts for violation of chapter 149, § 148, breach of contract, misrepresentation and deceit, and fraud along with other claims.

The calculated earned commissions to date are as follows:

## Damages Chart

|  | Amount Owed from 2012 | Damages Award (Amount Owed x 3) M.G.L. ch. 149, § 150 |
|---|---|---|
| Alan Sanderson | $108,503.00 | $325,509.00 |
| Melissa Plunkett | $119,950.68 | $359,852.04 |
| Paul Gentile | $95,426.35 | $286,279.05 |
| Brian Klauber | $101,327.36 | $303,982.08 |
| **TOTAL** | **$425,207.39** | **$1,275,622.17** |

These figures take into consideration some, but not all deals that closed and should have been paid out, but were not. These figures do not include attorney fees and costs.



## Swartz & Swartz
### ATTORNEYS AT LAW
*The John & Ebenezor Hancock House on The Freedom Trail*
NUMBER TEN MARSHALL ST., BOSTON, MASSACHUSETTS 02108
617-742-1900   •   FAX •  617-367-7193
EMAIL · ATTORNEY@SWARTZLAW.COM
WEBSITE · WWW.SWARTZLAW.COM

Letter to VMware, Inc.
July 22, 2013
Page 4

I hope we are able to resolve this issue out of court and I await your timely response. Thank you.·

Very truly yours,

*David P. Angueira*

David P. Angueira

DPA/meo

**U.S. Postal Service**
**CERTIFIED MAIL₁ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com₁

# OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.31 |

Postmark Here

Sent To
VMware, Inc. Headquarters
Street, Apt. No.; or PO Box No. 3401 Hillview Ave.
City, State, ZIP+4 Palo Alto, CA 94304

7011 2970 0002 7897 0097

PS Form 3800, August 2006          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

VMware, Inc. Headquarters
3401 Hillview Ave.
Palo Alto, CA 94304

#9997

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by ( Printed Name )
J. Collett
C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

JUL 2 5 2013
USPS

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☒ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label)
7011 2970 0002 7897 0097

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540



ATTORNEYS AT LAW
The John & Ebenezer Hancock House on The Freedom Trail
NUMBER TEN MARSHALL ſT., BOſTON, MAſſACHUſETTſ 02108
617-742-1900   ·   FAX · 617-367-7193
EMAIL · ATTORNEY@SWARTZLAW.COM
WEBSITE · WWW.SWARTZLAW.COM

October 25, 2013

<u>VIA CERTIFIED MAIL/RRR</u>
Attorney General Martha Coakley
Commonwealth of Massachusetts
Attorney General's Office
One Ashburton Place
Boston, MA 02108

Dear Attorney General Coakley,

### Notice of Wage Law Violation by VMware, Inc. Pursuant to M.G.L. c. 149 §148

Please be advised that I represent Alan Sanderson, Melissa Plunkett, Paul Gentile and Brian Klauber. My clients were all employed by DynamicOps. All were employed in the capacity of sales personnel. DynamicOps was acquired by VMware on or about July 20, 2012. At the time that VMware acquired DynamicOps, its headquarters was in California however, it also had regional a regional office in Massachusetts. At the time that VMware acquired DynamicOps it hired all of my clients who had previously been employed by DynamicOps. Each of these individuals were hired under the same salary and commission plan that they had been working under with DynamicOps. In fact, each had signed an updated commission plan prior to the close of December 2012, which constitutes binding contracts. My clients performed all requested services from various locations, including home offices with the approval and consent of VMware. As an incentive to promote future sales, VMware and its President and Chief Operating Officer, Mr. Carl Eschenbach created a commission plan wherein the company agreed to pay certain commissions to my clients provided they met certain quota requirements. My clients accepted these new proposals. Based on these representations that they would receive their commissions as agreed upon, each of my clients devoted the best efforts to the sale of VMware's products and the servicing of their clients. At no time did VMware indicate to any of my clients that they intended to breach their contract with my clients and unilaterally change their commission plan which would significantly and adversely impact all of my clients' earned compensation for the year, as well as their compensation for the future.

Without any prior notice, and after my clients had earned their respective commissions in early January 2013 all of the former DynamicOps sales staff, including executives were informed that they would not be paid at the tier 4 level of their commission plans. It was VMware's intentions for this revised compensation plan to apply not only prospectively but also retrospectively for the close of the 2012 year. This announcement was unexpected, not what was



### *Swartz & Swartz*
### ATTORNEYS AT LAW
*The John & Ebenezer Hancock House on The Freedom Trail*
NUMBER TEN MARSHALL ST., BOSTON, MASSACHUSETTS 02108
617-742-1900 • FAX • 617-367-7193
EMAIL • ATTORNEY@SWARTZLAW.COM
WEBSITE • WWW.SWARTZLAW.COM

Letter to Attorney General Martha Coakley
October 25, 2013
Page 2

contracted for between my clients and VMware, but more importantly affected commissions that had already been earned by and were due to my clients. Some of my clients, as well as, their colleagues, appealed the decision made by VMware however, their appeals were wrongfully denied.

As contracted for, each of my clients were entitled to commissions in the amounts and for the time periods as reflected below for the 2012 calendar year:

<u>Chart Illustrating the Compensation Owed under the 2012 Compensation Plan Adopted by VMware</u>

|  | Commission Earned for Full Year 2012 under DynamicOps Compensation Plan | Commission Paid for Full Year 2012 under VMware Compensation Plan | Amount Owed (Commission Earned Under DynamicOps Plan – Commission Earned Under VMware Plan) |
|---|---|---|---|
| Alan Sanderson | $547,530.00 | $439,027.00 | $108,503.00 |
| Melissa Plunkett | $321,085.49 | $201,134.81 | $119,950.68 |
| Paul Gentile | $471,950.36 | $376,524.01 | $95,426.35 |
| Brian Klauber | $352,046.02 | $250,718.66 | $101,327.36 |
| TOTAL OWED MY CLIENTS | $1,692,611.87 | $1,267,404.48 | $425,207.39 |

VMware, as an employer of individuals residing and/or working within the Commonwealth of Massachusetts, and Mr. Eschenbach were required to comply with all applicable laws regarding the regulation of wages of employees. Mass. Gen. Laws ch. 149, § 148. The wage regulations require employers to provide employees with all of their earned wages and are designed to prevent unreasonable delay on the part of the employer distributing to its employees their earned wages. Mass. Gen. Laws ch. 149, § 148. Boston Police Patrolmen's Ass'n v. Boston, 435 Mass. 718, 720 (2002). The law governing employees' wages explicitly includes coverage to those who earn compensation in the form of commissions and such employees are entitled to the same methods of recourse as an employee paid a definitive weekly or bi-weekly income. Mass. Gen. Laws ch. 149, § 148. Okerman v. VA Software Corp., 69 Mass.App.Ct. 771, 775-780 (2007). Any violation of the "Wage Act" (the law regulating employees wages) is ground for the Attorney General to file a complaint or seek indictment of the employer responsible for violating



**_Swartz & Swartz_**
ATTORNEYS ▌AT LAW
*The John & Ebenezer Hancock House on The Freedom Trail*
NUMBER TEN MARSHALL ST., BOSTON, MASSACHUSETTS 02108
617-742-1900   •   FAX • 617-367-7193
EMAIL • ATTORNEY@SWARTZLAW.COM
WEBSITE • WWW.SWARTZLAW.COM

Letter to Attorney General Martha Coakley
October 25, 2013
Page 3

Mass. Gen. Laws ch. 149, § 148. Mass. Gen. Laws ch. 149, § 150.   Upon a suit being
commenced there are limited grounds for an employer to bring a defense and no repayment plan
or payout to employees may happen at that time. Mass. Gen. Laws ch. 149, § 150.   Should an
employer be found to have violated the Wage Act all aggrieved employees should be entitled to
"an award of treble damages, as liquidated damages, for lost wages and other benefits and shall
also be awarded cost of litigation and attorney fees." Mass. Gen. Laws ch. 149, § 150. Melia v.
Zenhire, Inc. et al, 462 Mass. 164, 170 (2012). Additionally, a civil suit does not preclude
criminal action and punishment for a violation of the Wage Act. Mass. Gen. Laws ch. 149, §
27(c). Aggrieved employees are also entitled to loss of benefits, including 401k plans and
pension benefits. Mass. Gen. Laws ch. 149, § 150.

Please consider this letter notice to file a claim with the Attorney General's office to
report the illegal conduct of VMware where they failed to compensate my clients their earned
commission and failed to do so in a timely matter as required. Mass. Gen. Laws c. 149, § 148.

The calculated earned commissions to date are as follows:

### Damages Chart

|  | Amount Owed from 2012 | Damages Award (Amount Owed x 3) M.G.L. ch. 149, § 150 |
|---|---|---|
| Alan Sanderson | $108,503.00 | $325,509.00 |
| Melissa Plunkett | $119,950.68 | $359,852.04 |
| Paul Gentile | $95,426.35 | $286,279.05 |
| Brian Klauber | $101,327.36 | $303,982.08 |
| TOTAL | $425,207.39 | $1,275,622.17 |

These figures take into consideration some, but not all deals that closed and should have
been paid out, but were not. These figures do not include attorney fees and costs.

Very truly yours,

David P. Angueira

DPA/meo
cc:    Mary Hansbury, Esq.

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com₃

# OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.11 |

Postmark
Here

Sent To *AG Martha Coakley, Com. of MA*
Street, Apt. No.; or PO Box No. *One Ashburton Place*
City, State, ZIP+4 *Boston, MA 02108*

7011 1570 0000 6401 8818

PS Form 3800, August 2006                See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Attorney General Martha Coakley*
*Commonwealth of Massachusetts*
*Attorney General's Office*
*One Ashburton Place*
*Boston, MA 02108*
*#3692*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Nestor Morales* ☐ Agent ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

RECEIVED OCT 2 8 2013

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
   (Transfer from service label)     7011 1570 0000 6401 8818

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT | DOCKET NO. _____ |
|---|---|---|
| | COUNTY OF | MIDDLESEX |
| PLAINTIFF(S) | Alan Sanderson, Melissa Plunkett, Paul Gentile and Brian Klauber | DEFENDANT(S) VMware, Inc. |

| Type Plaintiff's Attorney name, Address, City/State/Zip Phone Number and BBO# | Type Defendant's Attorney Name, Address, City/State/Zip Phone Number (If Known) |
|---|---|
| David P. Angueira, Esq. BBO # 019610<br>Swartz & Swartz<br>10 Marshall Street<br>Boston, MA 02108<br>(617) 742-1900 | |

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.          TYPE OF ACTION (specify)          TRACK                                    IS THIS A JURY CASE?

E99 Misc Other (specify) - X track                                              ( ●  ] Yes   ○ ]  No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
    1.   Total hospital expenses                                                     $_____
    2.   Total doctor expenses                                                         $_____
    3.   Total chiropractic expenses                                               $_____
    4.   Total physical therapy expenses                                         $_____
    5.   Total other expenses (describe)                      Subtotal     $_____
B.  Documented lost wages and compensation to date                        $_____
C.  Documented property damages to date                                         $_____
D.  Reasonably anticipated future medical expenses                         $_____
E.  Reasonably anticipated lost wages and compensation to date        $_____
F.  Other documented items of damages (describe)                            $_____

G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

Total $_____

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

TOTAL       $.............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____                Date:  Mar 5, 2014

A.O.S.C. 3-2007

**County of Middlesex**
**The Superior Court**

CIVIL DOCKET # MICV2014-00989-B
Courtroom Civil B- Ct Rm 720- 200 TradeCenter, Woburn

RE:  Sanderson et al v VMware Inc.
TO:

David P. Angueira, Esquire
Swartz & Swartz
10 Marshall Street
Boston, MA 02108

## SCHEDULING ORDER FOR X TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINES |
|---|---|
| Service of process made and return filed with the Court by | 06/05/2014 |
| case shall be resolved and judgment shall issue by 03/02/2015. | 03/02/2015 |

- The final pre-trial deadline is not the scheduled date of the conference.
- You will be notified of that date at a later time.
- Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

Dated: 03/12/2014

Michael A. Sullivan
Clerk of the Court

Location: Civil B- Ct Rm 720- 200 TradeCenter, Woburn
Telephone: 781-939-2748